DECEMBER, 1821.

Lloyd and others
v.
the State.

---

## Administrator of Figures Lewis *against* Edwin Lewis.

*December*, 1821.

IN August 1805, *Edward Lewis* filed his bill in Chancery, against *Figures Lewis*, in the District Court of *Washington*, charging that they had been partners in a trading adventure, and praying for an account, &c. and for general relief. *Figures Lewis* answered and filed his cross-bill. The Cause was transferred to the Superior Court of *Baldwin* County, and a decree made in favour of complainant. *Figures Lewis* died. The Supreme Court of Errors and Appeals of *Mississippi* Territory, on a writ of Error prosecuted by *Patsey Lewis*, his administratrix, reversed the decree, and remanded the Cause, with instructions that an account should be ordered. By consent of the parties, in March 1816, the Judge of the Superior Court of *Baldwin* County made an order, appointing *James Inerarity*, *George Buchannan*, and *Addin Lewis* auditors, to take and report an account, and that " if either party fail to render a full and fair account, " when thereunto required by the auditors, then, and in that " case, it shall be the duty of said auditors to make up the " account from the best evidence that may be laid before " them." On the 28th June, 1816, the auditors reported a statement of the account, (showing a balance of $2515 $\frac{18}{100}$ due to complainant) " as the nearest approximation that they " can arrive at, towards justice, in the absence of the books

1, Administrator may revive writ of Error, and is entitled to continuance thereon as in other cases.

2, This Court has appellate jurisdiction in Chancery.

3, On writ of Error, on decree, plaintiff confined to Errors assigned as in other cases.

4, Exceptions to report should be taken before the master or auditors: they come too late if offered when application is made for decree in conformity to report.

5, Decree may be made in vacation, under order, by consent, for that purpose.

" and documents that would be necessary to enable them " to form a correct and exact decision. One party seem-" ing to rely entirely or principally on the validity of re-" ceipts Nos. 1 and 3, and judgment No. 2, as evidence of " a final settlement between the parties," the sufficiency of which they submit to the decision of the Court.

At *August* term 1816, of the Superior Court of *Baldwin* County, complainant prayed for a decree for the balance as stated by the Report above mentioned, "Whereupon the de-" fendant filed exceptions to the report of the auditors, and " the same being argued, the Court takes time to decide on " the whole, in vacation, which, by consent of parties, is to be as of this term."

On the 19th *September*, 1816, the Judge made an order, again referring the account to the same auditors, requiring each party to produce all partnership books and accounts, mentioned in the Bills and Answers, " as far as practicable." The auditors to meet within three months thereafter, at such time and place as they should think proper. If the defendant should fail to produce all the books and accounts mentioned in the Bills, &c., " The Court will decree and *does* " *hereby decree* the account as reported by the auditors ; and " if the complainant sould fail, the Court will dismiss his " bill"—each party to make oath, &c. " And if at the end of " three months said auditors, or a majority of them, shall " certify to the Clerk that the defendant has not produc-" ed the books and papers required by the above order, " then the Clerk shall enter a decree, agreeable to the Report, " already made, with costs and issue Execution."

The Clerk certifies that a paper was filed by *Robert Lewis*, in his office, of which he sets out a copy, which appears to be a certificate of *George Buchannan*, one of the auditors, dated *St. Stephens*, 5th *December*, 1816, stating that *Robert Lewis* has put into his hands a small trunk which, according to an affidavit made by him, and left with said *Buchannan*, contains all the books and papers of the copartnership of *Figures* and *Edwin Lewis* that were ever in *his* possession, the same being deposited for the inspection of the auditors appointed by the Court for the settlement of said copartnership.

The two other auditors, *James Inerarity* and *Addin Lewis* certify to the Clerk that no regular notification of the last order referring the account had been communicated to them by the defendant, and that no books, papers, or vouchers had been produced to them by the administratrix, according to the abovem-entioned decree of 19th *September*, 1816. This is dated *Mobile*, 19th *December*, 1816.

On the same day, the Clerk reciting the foregoing order or decree of 19th *September* 1816, and the certificate entered a, decree against the defendant, as administratrix of *Figures Lewis*, for the aforesaid $2515 $\frac{18}{100}$ and costs.

On the 1st *February*, 1817, the administratrix, *Patsey Lewis* sued out a writ of Error to the Supreme Court of Errors, &c. of the *Mississippi* Territory, *which she afterwards dismissed.* On the 9th of *January* 1818, she sued out a writ of Error to the General Court of the *Alabama* Territory, then the proper Appellate Court, from which, after the establishment of the State Government, the case was transferred to this Court.

In this Court, the death of *Patsey Lewis* was suggested, and at *November* Term 1820, *Robert Lewis* administrator, *de bonis non*, appeared by Mr. *Crawford* his counsel, and prayed to be admitted as party, and claimed a continuance, as matter of right, under the Act of 1802. (Laws Ala. 458, sec. 2.) Mr. *Pickens*, for defendant in Error, contended that the Statute does not authorize such continuance of a case in Error, as of right. He also moved to dismiss the writ of Error.

The Chief Justice.—The Statute provides that when any suit shall be depending in any Court of this Territory, and either of the parties shall die before final judgment, the Executor, &c. of such deceased, who was plaintiff, petitioner, or defendant, shall have full power to prosecute or defend such action until final judgment—and the Executor or Administrator who shall become a party as aforesaid, shall, upon *motion* to the Court where the suit is pending, *be entitled* to a continuance *until* the next term or time of holding the Court. If this tribunal be a Court, and this a suit in which the cause of action " by law survives," the case is within the express words of the Statute, and there would appear to be as much reason for the right of representatives to prosecute or defend in this Court as in any other. The judgment of this Court operate on their interests as much as the judgments of any other Court. A continuance then, in such a case, is matter of right, and if asked, must be granted. The motion for a continuance precludes all others. It was the intention of the Legislature to afford opportunity to the Executor or Administrator to become acquainted with the case which he is to prosecute or defend. He may be as ignorant of the grounds on which a motion to dismiss depends, as much taken by surprise, and as unprepared to defend it, as any other matter in the Cause. It is the opinion of the Court that the case must be continued.

At *June* term, 1821, Mr. *Hitchcock*, for plaintiff in Error,

Admr. of
Figures Lewis
*v.*
Edwin Lewis.

moved to dismiss the Writ of Error, on the ground that this Court has no appellate jurisdiction from a decree in Chancery. He relied on the 8th section of the 5th Article of the Constitution.

Mr. *Pickens,* for defendant in Error, resisted the motion, and relied on the 3d section of the same Article.

The Chief Justice delivered the opinion of the Court.

The 8th section of the 5th Article of the Constitution, taken separately, would seem to confine Chancery jurisdiction to the judgment of the Circuit Courts respectively, until the establishment of a Court of Chancery. This conclusion would, perhaps, be strengthened by considering the 3d section of the same Article in connexion with the 8th. But the rule of construction, which requires that the whole of an instrument should be taken together, *ut res magis valeat,* applies with great force here. Every part of the Constitution relating to the judiciary should be taken into view, and effect given to each, if possible. By the first section of the 8th Article, " the judicial power of this State shall be vested in *one ·" Su-" preme* Court, Circuit Courts, to be held in each County in " the State, and such inferior Courts," &c. This section alone seems to exclude the idea of any other Supreme Court; it certainly does not authorize any other Supreme co-ordinate tribunal. The second section declares the powers of this *one Supreme* Court—"The Supreme Court, except in cases otherwise " directed by this Constitution, shall have appellate jurisdic- " tion only, which shall be co-extensive with the State," &c. " Provided that the Supreme Court shall have power to is- " sue Writs of Injunction, quo Warranto, habeas corpus, " and such other remedial and original Writs *as may be ne-* " *cessary to give it a general superintendence and control of* " *inferior jurisdictions.*" If there can be *but one Supreme Court of appellate jurisdiction co-extensive with the State,* all other jurisdictions must be inferior. Any other Courts, now established, or which can hereafter be established under the Constitution, whether Courts of common Law or Courts of Chancery, are and will be inferior. The concluding clause of the 2d section gives to the Supreme Court the power of issuing such remedial and original Writs as may be necessary to give it a general superintendence and control over inferior jurisdictions. The convention then intended that this Court, however organized, or by whomsoever held, should alone be Supreme—that all jurisdictions in the state should be inferior to it, and that it should generally superintend, control, and limit them within their proper spheres.

The Court is therefore of opinion, that the motion to dis-
miss must be overruled.

At *December* Term, 1821—The case was determined on
the Errors assigned, which, as well as another question, then
raised, appear in the

### Opinion of the Court, delivered by the Chief Justice.

In the argument, Mr. *Crawford* for the plaintiff in Error,
has contended that the general rule " That the plaintiff
" shall be confined to the Errors assigned," does not apply
to Chancery Cases in an Appellate Court; but that if other
Errors than those assigned be found in any part of the Re-
cord, it will be the duty of the Court to reverse. To sup-
port this position, the practice of the Supreme Court of the
United States, and cases there determined, have been relied
on. It has been settled by some of the earliest decisions
of this Court,(a) *that the parties shall be confined to the
points put in issue by the assignment and joinder ;* but as
that rule was adopted with a general view to the practice of
the Court, and without considering whether there should be
a difference between cases at common Law and cases in
Chancery, we have examined this question with some care
and deliberation. All the cases cited to support the position
of the plaintiff were carried to the Supreme Court of the
United States by *appeal,* and not by writ of Error. It does
not appear to be the practice of that Court to assign Errors
in such cases ; and it would therefore appear to be necessary
to examine the whole Record to determine whether the de-
cree of the Court below was correct. By the Act of Con-
gress, 1789, it is made the duty of the Circuit Court of the
United States " in causes of Equity, Admiralty and Ma-
" ritime jurisdiction, to cause the facts on which they found
" their sentence or decree *fully to appear* on the Record,
" either from the pleadings and decree itself, or a state-
" ment of the case, agreed to by the parties or their Coun-
" sel ; or, if they disagree, by a stating of the case by the
" Court." 2. L. U. S. Ch. 4. sec. 19. There appears no
good reason for such a provision, unless it was intended for
the benefit of the Appellate Court. We have no such
Statute as to the Courts of this State. This case is not
brought here in the manner which seems to be practiced
in the Courts of the United States, but by writ of Error.
Errors have been assigned according to the uniform prac-
tice, and we can see nothing which will warrant a departure
from the established rule—to confine the parties to the
points put in issue. If, however, the Court were authorized

(a) *Ripley vs.
Coolidge and
Bright, ante,* 11.

DECEMBER, 1821.

Admr. of
Figures Lewis
v.
Edwin Lewis.

to go beyond the assignment, we should not feel justified in reversing the decree from the facts as they appear in the Record. In conformity to a decree of the Supreme Court of *Mississippi*, auditors were appointed to take an account between the parties. This order both parties, by their Counsel, acquiesced in. A report was made by the auditors agreeably to the order. The exceptions to the Report were not filed with the auditors or the Clerk, or offered to the Court until a motion was submitted to enter up a decree according to the auditors' report. From the Record we cannot see that the exceptions were good—they were not offered in proper time ; and the account appearing fair on its face, the Court, at that stage of the proceedings, was not authorized to open it for re-examination. (2 Maddox, 389.) It was contended that the certificate or receipt, given by defendant in Error, precluded him. The receipt is in qualified, not in general, terms : but, however general it might have been, it was not conclusive in a Court of Chancery. If a receipt be obtained by fraud or mistake, is it not competent for a Court of Equity to annul or correct it ? So far from insisting on this ground, it appears that the defendant, in the Court below, consented to include this receipt with the other matters to be tried.

It is assigned as Error that the decree is the decree of the Clerk, entered in vacation, and not of the Court. The Record shows that " the Court took time to decide the " whole in vacation," which, by consent of the parties, was " to be as of that term." Did this consent authorize the decree to be entered out of term time ? The answer of the Counsel for plaintiff is that consent cannot give jurisdiction. The law had given to the Court jurisdiction of the subject matter in controversy. The parties agree that this jurisdiction may be exercised in a particular manner, and to waive all objection to the irregularity—that the power of determining the cause in term time may be exercised out of term time. It would not be regular to make a final decree during the same term at which the bill was filed ; yet if both parties should put the case in a situation to be heard, and consent that a final hearing and decree should be then had, could either be permitted to impeach the decree, merely on the ground of the time at which it had been made ? This is a case in which the maxim " *consensus tollit errorem* " applies with strict propriety. A party cannot take advantage of an irregularity after having entered on the Record his consent to waive it. The parties cause to be entered on the Record their consent, that the Judge of the Court make his decree in vacation, as of that term—the Judge made a decree, and

DECEMBER, 1821.

Admr. of
Figures Lewis
v.
Edwin Lewis.

required the Clerk, on the happening of a certain contingency to enter it. Did this contingency happen? The 3d assignment alleges that it did not. According to the terms of the decree, and after the time limited for that purpose, a *majority* of the auditors certified that the defendant below had not produced the books, accounts, &c. in conformity to the decree. It is contended that the certificate of the other auditor shewed that she had produced them. The Judge's order required the certificate of a majority of the auditors, and that the defendant should produce the books, accounts, &c. and make affidavit that they were *all* which were in *her* possession, or within *her* knowledge. The certificate of Mr. *Buchannan* states that certain papers were delivered by *Robert Lewis* (then not a party in the cause) who made oath that they were all which were ever in *his possession.* It furnishes additional evidence of the defendant's failure to perform what was required to be done by her, before the auditors were to go into another investigation of the accounts.

The decree, by its own terms took effect at the expiration of the time limited for the defendant's producing the books, accounts, &c. if she failed to produce them. The Clerk was required, on this fact being certified by a majority of the auditors, to *enter* the decree according to the Report which had been made—surely not *his* decree, but that of the Judge, made on the account as reported.

The last assignment was that the decree was against *Patsey Lewis*, in her own right, when she was party only as administratrix. The Court did not understand the Counsel as insisting on this point. The decree is not entered with strict formality; but the Record shows that *Patsey Lewis* was made party, as administratrix of *Figures Lewis*, the original defendant, and no part of the Record appears to charge her in any other capacity.

It is the opinion of this Court that the decree of the Court below be affirmed, with costs.

Judge *Lipscomb* having been of counsel, gave no opinion.